[No. B199404. Second Dist., Div. Four. June 4, 2008.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and DAVID CARLS, Respondents.

854

**856**

COUNSEL

Guilford Steiner Sarvas & Carbonara, Frank E. Carbonara; Sacks & Zolonz and William E. Laffan for Petitioner.

Law Offices of Larry D. Rosenstein and Larry D. Rosenstein for Respondent David Carls.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

MANELLA, J.—

## INTRODUCTION

We granted the petition of the California Insurance Guarantee Association (CIGA) for a writ of review, filed after the Workers' Compensation Appeals Board (WCAB or Board) denied CIGA's petition for reconsideration of an award of benefits to injured worker David Carls.[1] CIGA contends the Board erred in rejecting its statute of limitations defense.[2] CIGA admits that the statutory period was tolled by the employer's failure to advise Carls of his rights under the workers' compensation law; however, it contends that Carls had actual knowledge of his rights more than one year before Carls filed a claim for benefits, causing the statutory period to run. CIGA also challenges the Board's finding that CIGA was estopped to assert the statute of limitations due to its delay in determining that the 1997 injury was a covered claim. Because CIGA has failed to show that it carried its burden to prove

---

[1] " 'CIGA is a compulsory association requiring most state regulated insurance companies to be members, and provides insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its policies.' [Citation.]" (*Stonelight Tile, Inc. v. California Ins. Guarantee Assn.* (2007) 150 Cal.App.4th 19, 31 [58 Cal.Rptr.3d 74].) The insurance carrier in this case became insolvent in 2000, and CIGA undertook its obligation to pay "covered claims," defined as "the obligations of an insolvent insurer . . . imposed by law and within the coverage of an insurance policy of the insolvent insurer; . . . which were unpaid by the insolvent insurer; . . . [and] for which the assets of the insolvent insurer are insufficient to discharge in full . . . ." (Ins. Code, § 1063.1, subd. (c)(1).) Once CIGA receives a claim for benefits, it is under an immediate obligation to determine whether it is a "covered claim." (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 557 [70 Cal.Rptr.2d 295].)

[2] The applicable statute of limitations is found in Labor Code section 5405, subdivision (a), which provides: "The period within which proceedings may be commenced for the collection of the benefits . . . is one year from . . . [¶] . . . [t]he date of injury." All further statutory references are to the Labor Code, unless otherwise noted.

actual knowledge sufficient to end the tolling of the statute of limitations, we reject its first contention. We also reject CIGA's substantial evidence challenge to the estoppel finding. We conclude that on the record presented, the Board did not err in rejecting CIGA's statute of limitations defense, and we affirm the order denying reconsideration.

## BACKGROUND

The material facts are undisputed. After we issued the writ of review, injured worker David Carls filed an answer admitting all material allegations of the petition, and adopting the petition's statement of facts as his own. Our summary is taken from the admitted allegations and the administrative record provided by the WCAB.

Carls was employed by Claremont Colleges as a sign painter. In 1996, he sustained a work injury to his left shoulder and neck, filed a workers' compensation claim and received temporary disability payments. In 1997, Carls injured his back after arriving at work two hours early. Although he notified his employer, the employer did not advise him of his potential eligibility for workers' compensation, and did not furnish him with a claim form, as required by law.[3] In 1999, Carls retained an attorney, Larry D. Rosenstein, who filed an application to adjudicate Carls's right to additional benefits relating to the 1996 injury. Carls did not file a claim for workers' compensation benefits for the 1997 injury until 2004.

In August 2002, when the claim for additional benefits for the 1996 injury was called for trial, the workers' compensation judge (WCJ) placed the matter off calendar to allow Carls to file a new or amended claim for the 1997 injury, but no new claim was presented until March 8, 2004, when Carls filed an application for adjudication of his claim for the 1997 injury. As a defense to the claim, CIGA raised the one-year statute of limitations set forth in section 5405, subdivision (a).

The 1996 and 1997 claims were consolidated for trial, which went forward in October 2004. Carls testified that when he injured his back in 1997, he reported the injury to Steve (his supervisor), who did not provide him with a claim form. Carls also spoke to Belinda Ochoa (apparently the employer's workers' compensation manager), who questioned why he had come to work so early. Because Ochoa "gave him a 'hard time,' " Carls went to his own doctor for treatment. He never received a letter from his employer advising him of his right to file a workers' compensation claim.

---

[3] See section 5401, subdivision (a); California Code of Regulations, title 8, section 9880.

The reports and deposition of Dr. Jon Greenfield, the physician who conducted the agreed medical examination (AME), were admitted into evidence. In his July 23, 2001 AME report, Dr. Greenfield noted that in 1997, Carls had injured his back and reported the injury to his employer. A notation on the signature page of the AME indicated that a copy of the AME report was sent to Rosenstein. Dr. Greenfield also reviewed and summarized Carls's medical records relating to treatment for the 1996 injury by Dr. Edward D. Amorosi and Dr. Ronald B. Perelman.[4]

Also in evidence were several of Dr. Perelman's reports. As early as 1999 Dr. Perelman sent a report to Rosenstein, in which he wrote: "In the latter part of 1997, while at work, [Carls] states that he stepped in a hole and twisted his body, which caused severe pain in his low back and right lower extremity. He states that this occurred about two hours before the start of his shift. He went to the office, laid [sic] on the floor and propped his legs up in a chair . . . . Thereafter, he reported the injury to his [foreman] and an injury report was completed. Apparently, he was told this injury took place prior to his shift and this was not considered work related."

In May 2005, the WCJ issued his findings and award, ruling that the claim was not barred by the statute of limitations. CIGA filed its first petition for reconsideration of that decision. Before it was heard, the WCJ rescinded the order, conducted further proceedings, and in April 2006, issued his amended findings and award. CIGA filed a second petition for reconsideration, which was granted. Finding the record inadequate to allow meaningful review, the Board rescinded the award and findings, and returned the matter for further proceedings.

After considering additional evidence, the WCJ again rejected CIGA's statute of limitations defense and entered an award. CIGA again petitioned the Board for reconsideration. In his report and recommendation regarding the petition for reconsideration, the WCJ found that, although Carls had filed his claim for benefits more than one year after his workplace injury, the statute was tolled by the failure of the employer, insurer, or CIGA to notify Carls of his right to claim benefits. Citing testimony by Carls that he was not sure that he had seen Dr. Greenfield's reports attributing his back pain to the 1997 injury, the WCJ found that CIGA had not met its burden to prove that Carls had actual knowledge of his right to claim workers' compensation

---

[4] In a separate document, also dated July 23, 2001, entitled, "Comment on Medical Records," Dr. Greenfield indicated that the 1997 injury was work related, and that Carls's own physician reported that he had stepped into a hole and twisted his body, causing lower back pain. In July 2002, a supplemental review clarified that the 1996 and 1997 injuries were separate injuries. Neither document indicated that copies of these reports were sent to the attorneys.

benefits for the 1997 injury. In addition, the WCJ concluded that CIGA was estopped from raising the statute of limitations because its conduct in failing to admit coverage for the 1997 injury until May 2003 "ultimately delayed applicant's filing of the Application for Adjudication . . . ."

The WCAB adopted the WCJ's report and recommendation, and incorporated them into its order denying reconsideration. On January 25, 2007, the WCJ entered a compensation award for the 1997 injury, and after the WCAB denied CIGA's petition for reconsideration of that order, CIGA timely filed its petition for review by this court. We granted the petition and issued the writ January 31, 2008.

## DISCUSSION

### 1. *CIGA's Contentions*

CIGA contends that the one-year statute of limitations barred Carls's claim for benefits for his 1997 back injury. As CIGA acknowledges, the statute is tolled by an employer's failure to notify its injured employee of a potential right to benefits, as required by section 5401, subdivision (a). (See *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57, 60 [216 Cal.Rptr. 115, 702 P.2d 197] (*Kaiser*).) However, CIGA contends that any such tolling in this case ended because Carls gained actual knowledge of the potential for workers' compensation benefits more than one year before he filed his claim.[5]

CIGA contends that the evidence showed three events by which Carls gained the requisite knowledge. First, CIGA contends that Carls knew from the moment of his injury in 1997 that he might have been entitled to workers' compensation benefits, because he had received benefits relating to his 1996 injury. Second, CIGA contends that Carls's awareness of his workers' compensation rights by 1999 was demonstrated by his having personally signed the application for the adjudication of benefits for the 1996 injury and by his retention of counsel in 1999 to represent him in that adjudication. Third, CIGA contends that Carls was aware of his rights no later than 2002, when the WCJ continued the trial as to the 1996 injury, in order to permit the filing of a new or amended application covering the 1997 injury.

### 2. *The Applicable Statute of Limitations and Tolling Under* Kaiser

■ "Within one working day of receiving notice or knowledge of [an industrial] injury . . . result[ing] in lost time beyond the employee's work

---

[5] Nowhere in CIGA's petition did it suggest that Carls's attorney's knowledge should be imputed to him.

shift at the time of injury or which results in medical treatment beyond first aid, the employer shall provide, personally or by first-class mail, a claim form and a notice of potential eligibility for benefits . . . to the injured employee . . . ." (§ 5401, subd. (a).) California Code of Regulations, title 8, section 9880, provides that the notice required by section 5401 must be in a writing worded in nontechnical terms, and must set forth specified information.[6]

■ The statute of limitations applicable here is one year from the date of an industrial injury. (§ 5405, subd. (a).) Thus, an employee must submit a claim for compensation within one year of his or her injury. However, "[i]f the employer breaches its statutory duty to notify an employee unaware of his workers' compensation rights of those rights, the limitations period is tolled for the period of time that the employee remains unaware of his rights. No tolling occurs if the employee has actual knowledge of his rights before the employer's breach. The employer has the burden of proving when the injured employee gained actual knowledge of his workers' compensation rights. The employee must know that he may be entitled to relevant benefits under the workers' compensation system." (*Kaiser, supra,* 39 Cal.3d at p. 60; see also *Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 35 [24 Cal.Rptr.3d 179, 105 P.3d 544] [tolling analysis of *Kaiser* still applies under amended statutes].)

■ Petitioner correctly notes that in *Kaiser,* the Supreme Court held that the tolling due to the employer's failure to give the required notice was not automatic, but arose only if the employee was prejudiced by the breach, and continued only while such prejudice existed. (See *Kaiser, supra,* 39 Cal.3d at p. 64.) However, the court made clear that prejudice means ignorance, and ignorance is presumed until the employee is given the requisite notice or otherwise gains actual knowledge that he may be entitled to workers' compensation. (*Id.* at pp. 65, 67 & fn. 8 ["we presume Martin was ignorant of those rights . . ."]; *Sidders v. Workers' Comp. Appeals Bd.* (1988) 205 Cal.App.3d 613, 622 [252 Cal.Rptr. 304] (*Sidders*).) The court explained: "If between the date of injury and the date the employer breaches, an employee

---

[6] The required information includes an explanation of the kind of events, injuries and illnesses covered by workers' compensation, the injured employee's right to receive medical care and how to get appropriate medical care, the role and function of the primary treating physician, the employee's right to select and change the treating physician and the right to temporary disability and permanent disability indemnity, vocational rehabilitation services and supplemental job displacement benefits. (Cal. Code Regs., tit. 8, § 9880, subd. (c)(2)–(11).) The notice must also identify the following persons or entities: the person to whom the injuries should be reported, the information and assistance officer, including an explanation of services available from that officer, the insurance carrier and the person responsible for claims adjustment. (*Id.,* § 9880, subd. (c)(1), (13).) Finally, the notice must notify the employee of applicable time limits and protections against discrimination. (*Id.,* § 9880, subd. (c)(11)–(12).)

gains the requisite actual knowledge of his workers' compensation rights, he will not be prejudiced by failure of his employer to notify him of those rights . . . . If the employee remains ignorant of his rights past the time the employer breaches its duty to notify, the employee will be prejudiced from the date of breach until the employee gains actual knowledge that he may be entitled to benefits under the workers' compensation system." (*Kaiser*, at pp. 64–65.) "Thus, our Supreme Court has concluded the employer has . . . an affirmative burden to establish either written notice was given to the employee or the employee had, in fact, actual notice of his workers' compensation rights." (*Sidders*, at p. 622.)[7]

### 3. *Standard and Scope of Review*

Review of a decision of the WCAB is limited to whether the Board acted without or in excess of its powers, whether the order, decision or award was unreasonable or procured by fraud or "whether, under applicable legal principles, the Board's conclusions are supported by substantial evidence in light of the entire record. [Citations.]" (*Granite Construction Co. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 1453, 1457 [5 Cal.Rptr.3d 828]; see § 5952, subds. (a)–(e).) We cannot reweigh evidence or decide disputed questions of fact. (*Keulen v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 1089, 1096 [78 Cal.Rptr.2d 500].) "It is within the province of the WCAB to make the factual determination as to whether an employee has knowledge of an industrial related injury and, if so, when that knowledge arose. [Citation.] An appellate court 'will not interfere with the board's factual findings if they are supported by substantial evidence or by reasonable inferences drawn from the testimony adduced. [Citations.]' [Citation.]" (*Galloway v. Workers' Comp. Appeals Bd., supra*, 63 Cal.App.4th at p. 886.) Where facts are undisputed, the application of the statute of limitations is one of law, which we determine de novo. (*Martino v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 485, 489 [126 Cal.Rptr.2d 812] [applying the statute of limitations of § 5410].)

Carls filed his claim for benefits when he applied in 2004 for adjudication of the 1997 injury, admittedly more than one year after the injury. (See § 5405,

---

[7] Following *Kaiser*, the law and regulations implementing it were amended to require the employer to notify an injured employee not only of his right to file a claim, but of the limitations period within which to do so. (See § 5401; Stats. 1989, ch. 892, § 46, p. 3035; Cal. Code Regs., tit. 8, §§ 9880, 9882.) In *Galloway v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.App.4th 880, 884–885 [74 Cal.Rptr.2d 374], the court held that, despite evidence that the employee had actual knowledge of his right to file a claim, the employer could not assert the statute of limitations where there was no evidence the employee had been advised of the time limits for filing a claim. As the court observed, "[E]ven if Galloway knew he had to file a claim, there is nothing in the record to show that he knew what the appropriate time limits were." (*Id.* at p. 887.) CIGA has not suggested the record establishes Carls's actual knowledge of the applicable time limits.

subd. (a).) Because the statute was tolled by the employer's failure to provide Carls with the notice required by section 5401, it was CIGA's burden to prove when Carls gained actual knowledge of his workers' compensation rights. (*Kaiser, supra*, 39 Cal.3d at p. 60.) To carry its burden, CIGA was required to overcome a rebuttable presumption that Carls was ignorant of his compensation rights. (*Sidders, supra*, 205 Cal.App.3d at p. 622.) As the parties do not claim that any material facts remain disputed, our task is to determine whether the undisputed facts show that CIGA met that burden.

### 4. *First Event: Receipt of Compensation for 1996 Injury*

CIGA contends that because Carls had already received workers' compensation benefits for his 1996 injury, he knew when he was injured in 1997 that he could claim compensation for workplace injuries. Past experience may show an awareness of the right to make a workers' compensation claim and receive benefits, but CIGA was required to show that Carls knew the 1997 injury was a potentially compensable industrial injury. (See *Reynolds v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 726, 729 [117 Cal.Rptr. 79, 527 P.2d 631] [employee with prior claim failed to realize heart attack was industrially caused].)

There was no substantial evidence that Carls was actually aware that the 1997 injury was potentially compensable as an industrial injury. Carls suffered the injury on the employer's property, but his shift had not yet started and was not scheduled to start for two hours. Carls's testimony suggests that his employer had convinced him that his injury was not work related. He testified that, because he had been on campus so early, his employer "gave him a 'hard time,' " which resulted in his seeking treatment from his own physician.

Under such circumstances, the injury may or may not have been compensable under the workers' compensation system, as it was suffered prior to the start of Carls's shift. (See *Seymour v. Setzer Forest Products, Inc.* (1954) 124 Cal.App.2d 608, 610 [268 P.2d 1084]; *Garcia v. Yedor* (1944) 67 Cal.App.2d 367, 368–369 [154 P.2d 1].) Whether it was compensable depended upon whether "at the time of the injury, [Carls was] performing service growing out of and incidental to his . . . employment and [was] acting within the course of his . . . employment." (§ 3600, subd. (a)(2); see also 2 Witkin, Summary of Cal. Law (10th ed. 2005) Workers' Compensation, §§ 201, pp. 787–789, 54, p. 603.) The record contains no evidence suggesting that Carls had any reason to doubt his employer's implication that the injury was not compensable. On the contrary, Carls testified that he sought treatment from his own physician.

■ Thus, Carls's awareness of his right to compensation for the 1996 injury did not necessarily inform him of his potential right to compensation for the 1997 injury. We conclude that such evidence was insufficient to overcome the presumption that Carls was ignorant of his compensation rights. (See *Kaiser, supra,* 39 Cal.3d at p. 67; *Sidders, supra,* 205 Cal.App.3d at p. 622.)

### 5. *Second Event: 1999 Retention of Counsel to Adjudicate the 1996 Injury*

CIGA contends that Carls became aware of his workers' compensation rights in 1999, when he retained counsel in connection with the 1996 injury and signed the application for adjudication of benefits for the 1996 injury. By signing the application, CIGA argues, Carls demonstrated an awareness of the existence of the workers' compensation system.

■ We have already rejected CIGA's suggestion that its burden was merely to prove that Carls had a general awareness of the existence of the workers' compensation system. Past experience with workers' compensation is not sufficient to prove knowledge of potential eligibility for a particular injury. (See *Reynolds v. Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d at p. 729.) CIGA fails to explain how Carls's signature on an application relating to the 1996 injury imparts actual knowledge of his potential eligibility for the 1997 injury.

Nor has CIGA explained how the retention of legal counsel in 1999 imparted the requisite actual knowledge. Petitioner's argument assumes that Carls knew what his attorney knew or should have known. As a general rule, an attorney's knowledge is imputed to his client. (*Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1231 [282 Cal.Rptr. 43].) However, knowledge is not imputed where actual knowledge is required. (*Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 828 & fn. 7, 829 [84 Cal.Rptr.2d 144] [where notice to a party is required, notice to the party's lawyer does not impart actual knowledge].) In *Kaiser,* the Supreme Court held that where an employer failed to provide the statutorily required notice, the statute of limitations was tolled until the employer demonstrated the employee had "actual knowledge" of his right to bring a claim. (*Kaiser, supra,* 39 Cal.3d at pp. 60, 64–65, 67 & fn. 8 ["City would have had to prove Martin had actual knowledge that he might be entitled to relevant benefits under the workers' compensation system."].) Imputed knowledge is constructive, not actual knowledge. (Civ. Code, § 18.) " 'Actual notice' is '[n]otice given directly to, or received personally by, a party.' " (*Nelson v. Superior Court* (2001) 89 Cal.App.4th 565, 574 [107 Cal.Rptr.2d 469], quoting Black's Law Dict. (7th ed. 1999) p. 1087.) "To

read 'actual notice' as imputed notice would stand Civil Code section 18 on its head." (*Rosenthal v. Garner* (1983) 142 Cal.App.3d 891, 895 [191 Cal.Rptr. 300].) Thus, counsel's knowledge does not satisfy *Kaiser*'s requirement of actual knowledge.[8]

CIGA contends that proof of Carls's knowledge comes from Dr. Perelman's 1999 report, prepared for the adjudication of the 1996 injury, because Dr. Perelman stated there that Carls suffered the 1997 injury "while at work." We have found no indication in the record that Carls ever saw the report, and CIGA does not claim that he did. Moreover, Dr. Perelman also noted: "Apparently he was told this injury took place prior to his shift and this was not considered work related." Such a comment may have placed counsel on notice that additional research was warranted, but as there is no evidence in the record that counsel discussed the matter with Carls, it did not prove Carls's actual knowledge.[9]

### 6. *Event No. 3: 2002 Request for Continuance*

CIGA contends that Carls was aware of his rights no later than August 27, 2002, when his attorney apparently requested a continuance of the trial as to the 1996 injury, in order to file a claim for the 1997 injury. The record does not reflect that Carls was present at that hearing or otherwise knew why the continuance was sought.[10] Thus, at most, the request for continuance shows counsel's belief that the 1997 injury may have been a compensable injury. As noted above, however, CIGA's burden was to show Carls had "actual knowledge" of his workers' compensation rights for the 1997 injury. (*Kaiser, supra,* 39 Cal.3d at pp. 60, 65, 67 & fn. 8; *Sidders, supra,* 205 Cal.App.3d at p. 622.) It failed to do so.

---

[8] In *Kaiser,* the Supreme Court highlighted the distinction between actual and constructive knowledge. Discussing the employer's responsibility to provide statutory notice to the employee, the court held that "the duty now arises when the employer has *actual or constructive knowledge* of any work-related injury . . . ." (*Kaiser, supra,* 39 Cal.3d at p. 64, italics added.) In contrast, the court emphasized that where the employer fails to provide the employee with statutory notice, the statute of limitations is tolled until the employee gains "actual knowledge" of his rights: "The employer has the burden of proving when the injured employee gained actual knowledge of his workers' compensation rights" (*id.* at p. 60); "the employee will be prejudiced from the date of breach until the employee gains actual knowledge that he may be entitled to benefits under the workers' compensation system" (*id.* at p. 65). The court made clear that to sustain its affirmative burden of demonstrating the statute of limitations had run, "City would have had to prove Martin had actual knowledge that he might be entitled to relevant benefits under the workers' compensation system." (*Id.* at p. 67, fn. 8.)

[9] Compare *Hurwitz v. Workers' Comp. Appeals Bd.* (1979) 97 Cal.App.3d 854, 863–864 [158 Cal.Rptr. 914], where there was substantial evidence that the employee had been advised by her attorney—and thus had actual knowledge—of her rights and the statute of limitations but, on her attorney's advice, elected not to file a claim.

[10] The minutes of the August 2002 hearing are recorded on a preprinted form, with boxes to check indicating whether the applicant was "present" or "not present." Neither box is checked.

### 7. *Estoppel*

CIGA contends the Board erred in adopting the WCJ's finding that CIGA's conduct delayed the filing of the claim, resulting in an estoppel to assert the statute of limitations.[11] In particular, CIGA contends that the finding is unsupported by substantial evidence because the WCJ's minutes and summaries of evidence failed to mention evidence of a misrepresentation of any fact by CIGA or of reliance by Carls upon any representation by CIGA, or other fact showing that CIGA's failure to timely admit coverage misled Carls or his attorney to his detriment.

The WCJ expressly found that CIGA's conduct delayed the applicant's filing, and ruled that CIGA was thus estopped to assert the statute of limitations. Specifically, the Board found that "the conduct of defendant CIGA, which failed to admit that it had coverage for the 1997 injury until sometime in May of 2003, ultimately delayed applicant's filing of the Application for Adjudication in the instant case." The WCJ thus found, as a matter of fact, that "[CIGA's] conduct contributed to the delay in the filing of the Application herein." CIGA did not request more specific findings in its petitions for reconsideration.

■ "Whether an estoppel exists—whether the acts, representations, or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice—is a question of fact . . . . [Citation.]" (*Industrial Indem. Co. v. Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 690 [252 P.2d 649].) To preserve a factual issue for review, the party challenging the finding bears the burden to ensure that specific findings were made on the disputed issues, by requesting them in its petition for reconsideration. (*U.S. Auto Stores v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 476–477 [93 Cal.Rptr. 575, 482 P.2d 199]; see § 5904.) Further, the party challenging the sufficiency of the evidence must ensure that the summaries reflect all the evidence to support those findings, by raising any deficiencies in its petition for reconsideration. (*Green v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 1426, 1446 [26 Cal.Rptr.3d 527]; *Heath v. Workmen's Comp. App. Bd.* (1967) 254 Cal.App.2d 235, 238 [62 Cal.Rptr. 139]; see § 5904.) As CIGA failed to do so, it may not now be heard to complain that the minutes and summaries of evidence insufficiently set forth the facts supporting the

---

[11] "An employer and its insurer are estopped to plead the statute of limitations when the actions or misrepresentations of either induce the employee to refrain from filing a claim until after the statute of limitations has run. [Citations.] To prove estoppel, the employee must show reliance on some act, omission, or statement of the employer or insurer. [Citation.]" (*McGee Street Productions v. Workers' Comp. Appeals Bd.* (2003) 108 Cal.App.4th 717, 726 [133 Cal.Rptr.2d 813]; see also *Benner v. Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349 [159 P.2d 24].)

WCJ's factual finding that CIGA's own conduct "contributed to the delay in the filing of the Application."[12] The finding of such ultimate fact was sufficient; the WCJ was not required to cite evidentiary facts. (*Argonaut Ins. Exchange v. Ind. Acc. Com.* (1958) 49 Cal.2d 706, 712 [321 P.2d 460], citing *Lumbermen's Mut. Cas. Co. v. Ind. Acc. Com.* (1946) 29 Cal.2d 492, 499 [175 P.2d 823].)

### 8. *Conclusion*

We conclude the Board did not err in finding CIGA had failed to meet its burden to prove that Carls gained actual knowledge of his potential eligibility for workers' compensation benefits for the 1997 injury more than one year prior to filing his claim. We also reject CIGA's alternative ground that the evidence was insufficient to support the finding of estoppel.

## DISPOSITION

The Board's decision is affirmed.

Willhite, J., concurred.

**EPSTEIN, P. J.,** Concurring and Dissenting.—The majority opinion affirms the order of the Workers' Compensation Appeals Board (Appeals Board) rejecting the statute of limitations defense raised by petitioner California Insurance Guarantee Association (CIGA). It does so on two grounds. The first is that the failure of the employer to furnish the employee (applicant) with the statutory notice of his right to proceed under the workers' compensation law tolled running of the one-year period within which a claim must be filed. (See Lab. Code, §§ 5401, subd. (a), 5405, subd. (a); all further statutory citations are to this code.) The second is that CIGA's conduct in failing to acknowledge coverage for the accident at issue estops it from asserting the limitations defense. Based on the record before us (and, more particularly the absence of a further record on the issue), I agree that we must uphold the ruling of the Appeals Board on estoppel. But I cannot accept the conclusion of my colleagues that the limitations period continued to be tolled once applicant's attorney took action on his behalf before the Appeals Board hearing officer with respect to the claim at issue.

---

[12] CIGA's petitions for reconsideration did not include a request for more detailed summaries. Nor did CIGA request a transcript of all oral proceedings, or submit a declaration summarizing proceedings that were not transcribed. (See Cal. Code Regs., tit. 8, § 10740.) We note, for example, that the attorneys appeared before the WCJ in a hearing on October 31, 2006, in which the minutes reflect the matter was resubmitted "on all issues, and in particular the statute of limitations." CIGA failed to provide a record of those proceedings.

The basic facts are amply and fairly set out in the majority opinion. As pertinent here, they show that applicant suffered an industrial injury in 1996, for which he filed a timely workers' compensation claim, and that he suffered another injury in 1997 for which he did not file a claim until 2004. His employer never sent him the notification required by section 5401. On August 27, 2002, at a hearing on the 1996 injury, applicant's attorney asked that the matter be continued so that he could file an amended application to assert a claim based on the 1997 injury. This request was granted, and the matter was taken off calendar so that the amended application could be filed. It was finally filed more than a year and one-half later. Both sides agree that the limitations period was tolled until the August 2002 hearing. The issues in this case are whether there was a tolling after that, and whether CIGA is estopped to assert the statute of limitations.

## 1. Estoppel Due to Conduct of CIGA

The order from which CIGA prosecutes this appeal arose from a majority decision of the Appeals Board upholding the post-reconsideration findings and award of the workers' compensation judge. That decision and its affirmance by the Appeals Board were entirely based on estoppel against CIGA for failing to admit coverage until shortly before the amended application was filed. The record we have is sparse as to how the applicant was prejudiced by CIGA's failure to acknowledge coverage. But what we have does not negate the existence of sufficient grounds to support an estoppel. As the majority points out, it is CIGA's burden, as the party seeking to overturn the final adjudication, to demonstrate that the decision is unsupported with respect to estoppel. CIGA has failed to do so, an omission that compels affirmance of the Appeals Board order it attacks. It is for that reason that I concur in the majority opinion on estoppel against CIGA, and the resulting adjudication affirming the order.

## 2. Failure to Provide Notice of Workers' Compensation Rights

In *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57 [216 Cal.Rptr. 115, 702 P.2d 197] (*Kaiser*), our Supreme Court dealt with then-recent changes in the workers' compensation law with respect to limitations periods as they applied to the mandatory notification of rights to employees claiming injury. It held that failure to provide the notification results in a tolling of the one-year limitations period until the applicant gains actual knowledge that he or she may be entitled to benefits under the workers' compensation system, so long as the employee is prejudiced by the failure to give notice. Prejudice is presumed from lack of notification. As the majority points out, the court used the phrase "actual knowledge," in contrast to constructive knowledge, several times over the course of the

opinion. From this, the majority concludes that knowledge by applicant's attorney cannot be imputed to applicant.

CIGA advanced three theories why the tolling should have ended no later than the August 27, 2002 hearing. I agree with my colleagues that two of them—applicant's receipt of benefits from the 1996 injury, showing that he was aware of the workers' compensation law, and the fact that he retained counsel with respect to that injury—do not suffice. We differ about the third: the actions of his attorney at the August 2002 hearing.

The *Kaiser* court was not faced with, and did not specifically address, the case of an applicant who is represented by an attorney in proceedings under the workers' compensation law in which the attorney takes action on the applicant's behalf with respect to the particular injury at issue. The majority argues that knowledge of the attorney cannot be imputed to the employee, because it would amount only to "constructive knowledge" by the latter. The case they cite for this proposition, *Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819 [84 Cal.Rptr.2d 144], arises out of another context (the Administrative Procedure Act). It is distinguishable because it dealt with a statute that required notification to a *party*, as distinguished from the attorney for a party. (*Herman*, at p. 829.) *Kaiser* does not involve such a statute.

But even accepting the implicit conclusion of the majority that the Supreme Court sought to establish a bright-line rule under which an attorney's knowledge, by itself, is not enough to stop tolling of the statute, applying the rule to this case goes beyond its logic. The purpose of notification is, of course, to inform the worker that he or she may have rights to benefits under the workers' compensation law, so that he or she may take steps to retain counsel, or to act in propria persona, in filing and pursuing a claim. That objective is satisfied when the worker retains counsel and the attorney retained takes steps before the Appeals Board to advance the applicant's claim for benefits with respect to *the particular injury at issue.*

That is what happened here. Counsel for applicant (the same attorney representing him on this appeal) appeared at a workers' compensation hearing concerning the 1996 injury and asked that the matter go over so that he could amend the application to add a claim for benefits for the 1997 injury. As summarized by the dissenting member of the Appeals Board, it appeared that "applicant's attorney knew the separate 1997 injury was responsible for applicant's back problem since at least July 2001. He was instructed by the WCJ to file a new application in August 2002. Applicant did not file the application until, at earliest, March 8, 2004. Any tolling of the statute of limitations, that may initially have been justified in this case, had certainly long expired."

I find it difficult to conclude that the Supreme Court intended that the tolling rule it announced in *Kaiser* would continue to apply once the applicant's retained attorney appears in workers' compensation proceedings on his behalf and takes action with respect to the particular injury.

The dissenting Appeals Board member saw no reasonable explanation for the delay in filing from August 27, 2002, to March 8, 2004. Whether there is such justification depends on the basis for an estoppel against CIGA. And for that, as already indicated, CIGA has not presented an adequate record to justify reversal of the Appeals Board's decision.

For these reasons I would affirm the decision of the Appeals Board, but only on the basis given by that board—that CIGA was estopped to claim application of the limitations statute.